IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANGELA McLAUGHLIN, *et al*, } | |
| } | |
| *Plaintiffs*, } | |
| v. } | Civil Action No. H-08-798 |
| } | |
| INTREPID HOLDINGS, INC., *et al*, } | |
| } | |
| *Defendants*. } | |

## OPINION AND ORDER

Presently before the Court is Plaintiffs' motion for partial summary judgment (Doc. 27), to which no response has been filed. For the reasons set forth below, the Court finds that Plaintiffs' motion should be granted-in-part and denied-in-part.

I.      Background and Relevant Facts

Plaintiffs Angela McLaughlin (McLaughlin), Cheryl Acker (Acker), Ella Wilson (Wilson), Jennifer Wean (Wean), Jennifer Levine (Levine), Margaret L. Kerr (Kerr), Marie Danley (Danley), Mark D. Webster (Webster), Shirley Moody (Moody), Noel A. Lunsford (Lunsford), Cheng Hsieh (Hsieh), and Cynthia Brinkman (Brinkman) (collectively, Plaintiffs) filed suit against Defendants Intrepid Holdings, Inc. d/b/a Intrepid Holdings, Inc. and d/b/a RX Fulfillment Services, Inc. (Intrepid), RX Fulfillment Services, Inc. (RX), My Urban Clinic, Inc. d/b/a My Clinic (My Clinic), My Healthy Access, Inc. (My Healthy Access), Telemedicus, Inc. (Telemedicus), Tony Means (Means), Maurice R. Stone (Stone), Kevin M. Bell (Bell), and Eddie Douglas Austin, Jr. (Austin) (collectively, Defendants) for violations of the Fair Labor Standards

Act (FLSA), 29 U.S.C. § 201 *et seq.*[1] Specifically, Plaintiffs allege that that they did not receive overtime compensation at one and one-half times their regular rate, that Defendants failed to reimburse them for their out-of-pocket work-related expenses, that their paychecks and expense checks were returned by the bank unpaid for insufficient funds, and that Defendants failed to pay them while they were away from work utilizing accrued paid time off.

Plaintiffs have filed the instant motion for partial summary judgment requesting a ruling that Intrepid, My Clinic, and My Healthy Access are joint employers under FLSA. As such, the Court will limit its description of the facts to those three entities and their relationship to Plaintiffs and one another. Before going into specifics, the Court references a June 27, 2007, press release in the Houston Business Journal to summarize:

> Houston-based Intrepid Holdings . . . provides clinic, pharmacy and related health care services in urban markets ***under the monikers of My Healthy Access Inc., My Urban Clinic Inc.***, Rx Fulfillment Services Inc. and Intrepid Systems Inc.

(Doc. 27 Ex. A-4) (emphasis added).

On April 27, 2005, Intrepid entered into an agreement to purchase 100% of RX. (Doc. 27 Ex. A-1). Up until that time, Intrepid had been a shell company with no assets or liabilities. (*Id.*). After Intrepid purchased RX, the shareholders and managers of RX gained control of Intrepid. (*Id.*). At that time and at all times relevant to this case, Intrepid's corporate offices were located at 3200 Wilcrest Avenue, Suite 575, Houston, Texas 77042. (Doc. 27 Ex. A-9 at 1, 10).

On May 11, 2006, Intrepid announced the formation of Intrepid Healthcare Group (IHG), which placed the healthcare assets of Intrepid under one management and operating structure. (Doc. 27 Ex. A-4). IHG was composed of the various Intrepid subsidiaries including,

---

[1] Plaintiffs voluntarily dismissed their claims against Defendants Bell and Means on April 21, 2009, and June 3, 2009, respectively. (Docs. 30 & 32).

*inter alia*, RX and My Healthy Access.  (*Id.*).  Means remained president of RX and was appointed president of IHG.  (*Id.*).

The Application for Registration of a Foreign For-Profit Corporation for My Healthy Access, which was executed by Means as the corporation's president, on September 22, 2006, lists 3200 Wilcrest Drive, Suite 575, Houston, Texas 77042 as the principal office address and Kathleen Delaney (Delaney) as the initial registered agent.  (Doc. 27 Ex. A-2).  The Certificate of Formation For-Profit Corporation for My Clinic, lists Means as one of the two directors, 3200 Wilcrest Drive, Suite 575, Houston, Texas 77042 as the address, and Delaney as the initial registered agent.  (Doc. 27 Ex. A-5).  Delaney executed and filed this certificate on September 27, 2006.  (*Id.*).  IHG served as a parent company to both My Healthy Access and My Clinic.  (Bell Dep., Doc. 27 Ex. B at 18-19).

The offer of employment letters to McLaughlin, Webster, Moody, Wean, and Kerr were all written on letterhead with the My Clinic logo.  (Doc. 27 Ex. A-6).  Paychecks issued to McLaughlin, Moody, Hsieh, Kerr, Danley, and Lunsford were all drawn on the account of "My Urban Clinic, Inc. d/b/a My Clinic."  (Doc. 27 Ex. A-7).  Letters of termination to Morton, McLaughlin, Wilson, Moody, and Webster were signed by Means as CEO of The Clinic Company, Inc.[2]  (Doc. 27 Ex. A-14).

II.     Legal Standards

     A.     Summary Judgment

A party moving for summary judgment must inform the court of the motion's basis and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as

---

[2] The owner of My Clinic sold the assets of most of its healthcare and medical real estate related businesses to The Clinic Company, Inc., which explains why The Clinic Company sent out the termination letters.  (*Id.*).

to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party makes this showing, the non-moving party must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248. The non-moving party must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*)). The non-moving party cannot discharge its burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife*

*Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment.  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992)).

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita*, 475 U.S. at 587-88.  In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form.  *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).  Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party.  *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).  The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

A non-moving party's failure to respond does not automatically entitle the movant to a "default" summary judgment.  *Lewis v. Continental Airlines, Inc.*, 80 F. Supp. 2d 686, 694 (S.D. Tex. 1999); *Taylor v. Dallas County Hosp. Dist.*, 959 F. Supp. 373, 376 (N.D. Tex. 1996). "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule.  The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed."  *Lewis*, 80 F. Supp. 2d at 694 (quoting *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776

F.2d 1277, 1279 (5th Cir. 1985))). The district court may, however, accept as undisputed the facts set forth in support of the motion for summary judgment to the extent it is unopposed. *Id.* (citing *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Rayha v. United Parcel Serv., Inc.*, 940 F. Supp. 1066, 1068 (S.D. Tex. 1996)).

      B.    <u>Fair Labor Standards Act</u>

The Fair Labor Standards Act (FLSA) was enacted to eliminate the existence of "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers" in industries engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 202. Employees engaged in commerce or in the production of goods for commerce or those employed in an enterprise engaged in commerce or in the production of goods for commerce are protected by the overtime provisions of FLSA, which require that these employees be paid one and one-half times their regular rate of pay for hours they work in excess of forty in a workweek. 29 U.S.C. § 207(a).

Under FLSA, an "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). FLSA employers must comply with FLSA's requirements for all the workers it "employs," a term defined as "includ[ing] to suffer or permit to work." 29 U.S.C. § 203(g). For the purposes of FLSA, the term "employer" has been broadly interpreted and may include one or more joint employers depending on the nature of the relationship between the employers. *Falk v. Brennan*, 414 U.S. 190, 195 (1973); 29 C.F.R. 791.2(a).

To determine whether a defendant is a joint employer, the court considers the "economic realities" of the relationship between the alleged employer and employee. *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990) (citations omitted). Some of the relevant factors

under the economic realities test are whether the alleged employer: (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Id.* at 1553 (citations omitted).[3]  *See also Yaklin v. W-H Energy Services, Inc.*, 2008 WL 4692419, at *7 (S.D. Tex. Oct. 22, 2008) (quoting *Lehman v. Legg Mason, Inc.*, 532 F. Supp. 2d 726, 733 (M.D. Pa. 2007) ("Liability for violating an employee's rights under FLSA has attached to a parent corporation for the acts of a subsidiary when the parent substantially controls the terms and conditions of employment at its subsidiary on a regular basis."). No one factor is dispositive. Instead, the ultimate determination of the employment relationship depends "upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).

III.     Discussion

Plaintiffs have filed the instant motion for partial summary judgment requesting that the Court find that, as a matter of law, Intrepid, My Clinic, and My Healthy Access are joint employers of Plaintiffs. Defendants have failed to provide an argument in response. For the reasons set forth below, the Court does not find, as a matter of law, that Defendant My Healthy Access is a joint employer because it is unclear from the record what, if any, connection Plaintiffs have with this Defendant. Plaintiffs' offer letters of employment have the My Clinic logo, and their paychecks were drawn on the account of "My Urban Clinic, Inc. d/b/a My

---

[3] The Fifth Circuit has also applied a similar five-factored test, which asks the following: "(1) Whether or not the employment takes place on the premises of the company?; (2) How much control does the company exert over the employees?; (3) Does the company have the power to fire, hire, or modify the employment conditions of the employees?; (4) Do the employees perform a 'specialty job' within the production line?; and (5) May the employee refuse to work for the company or work for others?" *Itzep v. Target Corp.*, 543 F. Supp. 2d 646, 653 (W.D. Tex. 2008) (quoting *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669-70 (5th Cir. 1968)).

Clinic." (Doc. 27 Ex. A-6, A-7). The Court does, however, agree with Plaintiffs' contention that Defendants Intrepid and My Clinic are joint employers.

It is clear from the evidence presented that Intrepid is the parent company of My Clinic. After Intrepid formed IHG in the Spring of 2006, its healthcare assets were under one management and operating structure with Tony Means as president. Offer letters of employment to Kerr and Webster were signed by Means as CEO of My Clinic. (Doc. 27 Ex. A-6). Letters terminating the employment of Morton, McLaughlin, Wilson, Moody, and Webster were also signed by Means, but this time as CEO of The Clinic Company, Inc. (Doc. 27 Ex. A-14). As it states in these letters, "[t]he former owner of [My Clinic] . . . sold the assets of most of its healthcare and medical real estate related businesses to The Clinic Company, Inc." (*Id.*). The record shows that the parent company, IHG, substantially controlled the terms and conditions of employment at its subsidiary, My Clinic. Means' dual role as president of IHG and CEO of My Clinic is evidenced by his signature on hiring and termination letters. Additionally, all assets were under the sole management and operating structure of IHG. As such, the Court finds that Intrepid and My Clinic are joint employers under FLSA.

IV.     Conclusion

For the reasons set forth above, the Court hereby ORDERS that Plaintiffs' motion for partial summary judgment (Doc. 27) is GRANTED-IN-PART and DENIED-IN-PART.

SIGNED at Houston, Texas, this 2nd day of September, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE